Ray E. Gallo (SBN 158903)
rgallo@gallo-law.com
GALLO LLP
1299 Fourth Street, Suite 505
San Rafael, CA 94901
Phone: 415.257.8800

Attorneys for Plaintiff,
individually and on behalf of
all others similarly situated

# THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDY KNOWLES, as an individual, and on behalf of other persons similarly situated, <br><br> Plaintiff, <br> v. <br> UNITED DEBT HOLDINGS, LLC, a Delaware Limited Liability Company, NATIONWIDE SERVICES, a New York Corporation, HARTFORD MEDIATION GROUP, a New York Partnership, and PAYMENT MANAGEMENT SOLUTIONS, INC., a New York Corporation, and DOES 1 through 500, inclusive, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> 1. Violations of the Fair Debt Collection Practices Act <br> 2. Violations of the Rosenthal Fair Debt Collection Practices Act <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Mandy Knowles, acting for herself and all others similarly situated, complains as follows against Defendants United Debt Holdings, LLC, Nationwide Services, Hartford Mediation Group, Payment Management Solutions, Inc., and Does 1 through 500, inclusive. Plaintiff's allegations are based on the investigation of counsel, and thus on information and belief, except as to the individual actions of Plaintiff, as to which Plaintiff has personal knowledge.

## 1. Introduction

1. Defendants are debt collectors who use underhanded and unlawful methods, including claiming that they have issued arrest warrants for failure to pay consumer debts, to harass Plaintiff and other California residents (the "Class," as defined below). Defendants' acts violate California and federal laws, including the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 et seq.

## 2. Jurisdictional Statement & Parties

### A. *Jurisdiction & Venue*

2. This Court has jurisdiction over the subject matter of this action because Plaintiff's claims arise under the FDCPA, 15 U.S.C. § 1692 et seq.

3. Venue is proper in the Eastern District of California because a substantial part of the events giving rise to the claim occurred in this district. Specifically, Plaintiff resides within the district and was located within the district when she received calls from, and communicated with, Defendants.

### B. *Parties*

4. Plaintiff Mandy Knowles ("Knowles" or "Plaintiff") is an individual who is, and at all relevant times was, a resident of Tulare County, California.

5. Defendant United Debt Holdings, LLC ("UDH") is a Delaware limited

liability company with its principal place of business in the State of Colorado. UDH is the current holder of Knowles' debt and directs the actions of the other Defendants.

6. UDH is in the business of and regularly engages in the collection of debt. UDH is a "debt collector" within the meaning the FDCPA, 15 U.S.C. § 1692a(6), and the Rosenthal Act, Cal. Civ. Code § 1788.2(c).

7. Defendant Nationwide Services ("Nationwide") is, on information and belief, a New York Corporation with its principal place of business in the State of New York. Plaintiff alleges Nationwide's citizenship based on the citizenship of its co-defendants and co-conspirators, Hartford Mediation Group and Payment Management Solutions Inc., which reside in the State of New York.

8. Nationwide is in the business of and regularly engages in the collection of debt. Nationwide is a "debt collector" within the meaning the FDCPA, 15 U.S.C. § 1692a(6), and the Rosenthal Act, Cal. Civ. Code § 1788.2(c).

9. Defendant Hartford Mediation Group ("Hartford") is, on information and belief, a New York partnership whose individual members are citizens of the State of New York. The allegation concerning Hartford's citizenship is based on its phone number, which Nationwide provided to Plaintiff and instructed Plaintiff to call, which is located in the 585 area code. The 585 area code covers Rochester, New York and surrounding areas.

10. Hartford is in the business of and regularly engages in the collection of debt. Hartford is a "debt collector" within the meaning the FDCPA, 15 U.S.C. § 1692a(6), and the Rosenthal Act, Cal. Civ. Code § 1788.2(c).

11. Defendant Payment Management Solutions Inc. ("PMS") is a New York corporation with its principal place of business in the State of New York.

12. PMS is in the business of and regularly engages in the collection of debt. PMS is a "debt collector" within the meaning the FDCPA, 15 U.S.C. §

Gallo LLP
1299 Fourth Street, Suite 505
San Rafael, CA 94901

1692a(6), and the Rosenthal Act, Cal. Civ. Code § 1788.2(c).

13. Defendants Nationwide, Hartford, and PMS are the agents of UDH and/or were authorized to contact Plaintiff and the Class, as defined below, on UDH's behalf in an attempt to collect purported consumer debt(s).

14. UDH is vicariously liable to Plaintiff and the Class for the wrongful conduct of these debt collector agents in the course of their collection of UDH debt. *See, e.g.*, *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000); *Huy Thanh Vo. V. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1089–90 (E.D. Cal. 2013); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097–98 (C.D. Cal. 2006).

15. Additionally, or alternatively, UDH directly committed the conduct alleged below, while falsely identifying itself as "Nationwide," and/or "Hartford."

16. The true identities of Does 1 through 500, and all of them, are unknown to Plaintiff. They will amend this complaint to identify them when their identities are ascertained. On information and belief, each of Does 1 through 500 is or at relevant times was the partner, general partner, agent, employee, officer, director, controlling shareholder, principal, corporate parent, corporate subsidiary, affiliate, co-conspirator, debt investor, claim holder, or joint or co-venturer of one or more of the Defendants or the lender, holder, assignor, assignee, and/or collector of a Plaintiff or Class member's debt and is responsible for the wrongdoing alleged herein by virtue of having authorized, ratified, consented to, perpetrated, participated in, or aided and abetted that wrongdoing.

3. **<u>Facts</u>**

17. In 2012, Plaintiff allegedly defaulted on a small consumer loan in the principal sum of approximately $315 that she owed to Advance America (the "<u>Debt</u>").

18. The Debt arose from a consumer credit transaction used primarily for

personal, family, or household purposes and has not been reduced to judgment. It is therefore a "consumer debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3), (5), and the Rosenthal Act, Cal. Civ. Code § 1788.2(f).

19. Advance America "charged-off" Plaintiff's Debt and sold it to First Financial Asset Management, Inc. ("First Financial"), which is not a party to this lawsuit.

20. In March 2014, UDH purchased Knowles' Debt from First Financial.

21. UDH acquired Knowles' Debt, and the debts of the Class, for the purpose of facilitating collection.

22. Beginning in early October 2014, Plaintiff began receiving voicemails on her cell phone concerning the Debt from a man identifying himself as "Mark Roberts" ("Roberts"). Plaintiff's caller ID identified the call as originating from the 832 area code.

23. Roberts claimed to be a "mediator to an attorney" and neither identified himself as a debt collector nor identified the company that employed him.

24. On the messages, Roberts claimed that Advanced America was prepared to have an arrest warrant issued against Knowles unless she promptly paid the alleged $315 Debt.

25. Roberts stated there was a lawsuit pending titled "State versus Mandy Knowles."

26. Knowles attempted to call Roberts back during her lunch break but was placed on hold and hung up after waiting for 10 minutes of her 30 minute lunch break.

27. On or about October 15, 2014, Knowles received a voicemail, this time from a woman identifying herself as "Liz Wilson" ("Wilson"), concerning the Debt. Knowles' caller ID identified the call as originating from a toll-free number, having an 844 area code.

28. This voicemail stated:

> [This message is] for Mandy Knowles. My name is Liz Wilson. I'm contacting you today from Nationwide Services. The call is in reference to a two-part felony complaint that was placed with my office this morning. We have been retained to file charges with the Tulare County District Attorney's Office. Once filed, the sheriff's department will accompany and assist me to your residence and/or place of employment for your detainment. If you have any questions, concerns, or objections, you must contact my office immediately, 844-594-0200. Upon my arrival please be advised that if you do own any large dogs or firearms they will need to be out of immediate harm's way of myself and the uniformed officer. As well please have adequate supervision for any minor children in the home. Mandy Knowles, you have now been legally notified in accordance to [*sic*] all federal and state laws.

29. Knowles, out of fear—reasoning that someone would not make such threats if they were untrue, and fearing for her and her children's safety—returned the call to avoid being arrested.

30. When Knowles called the number as instructed, a woman who identified herself as an employee of Nationwide answered.

31. She instructed Knowles to call another company, Hartford, and provided their number in the 585 area code.

32. Knowles called Hartford's number and a woman who identified herself as "Ms. Mason" and an employee of Hartford answered. Ms. Mason asked Knowles to confirm her name and last four digits of her Social Security Number.

33. Knowles asked Mason whether she was speaking to a debt collection agency.

34. Mason answered that she was "a mediator for an attorney." Mason did not acknowledge that she was a debt collector or worked for a debt collection agency.

35. Mason confirmed that, as suggested in the voicemail from Nationwide, an arrest warrant had been issued based on Knowles' failure to pay her $315 Debt.

**COMPLAINT**

36. Mason told Knowles that she could avoid being arrested by immediately paying $1,000.

37. Knowles told Mason that she did not have that sort of money. Mason responded that the amount was what Knowles owed Advance America, plus attorneys' fees. On information and belief, this claim was a lie as no attorneys' fees had been incurred.

38. After Knowles again told Mason that she did not have that much money, Mason placed her on hold. After a few minutes, Mason returned to the line and told Knowles that they would take $540 to settle the Debt and cancel Knowles' imminent arrest.

39. Knowles told Mason that she could not afford to pay that much all at once, but could pay it in two installments, half now and half later. Mason again put Knowles on hold and, after a few minutes returned to the line. Mason told Knowles that "the attorney" had agreed to those terms and that they could stop the process of her arrest.

40. Mason then informed Knowles to stay on the line and that she would be transferred to PMS to provide her payment information.

41. Knowles was transferred to someone who identified herself as "Renee Carter" ("Carter") and claimed to be an employee of PMS.

42. Carter informed Knowles that the call may be recorded.

43. Carter asked for Knowles' credit card number, address, email address, and other personal information, which Knowles provided. Carter also told Knowles that she would e-mail Knowles a document that Knowles would have to sign electronically, via DocuSign, authorizing the payment. A true and correct copy of the document Carter e-mailed to Knowles, with Knowles' personal information redacted, is attached hereto as Exhibit 1.

44. After providing that information, Knowles asked Carter whether,

1 having provided this information, the arrest warrant would be recalled. Carter
2 refused to answer Knowles' question and instead transferred her back to Mason.

3     45. By her response, Carter seemed to acknowledge she was aware of the
4 arrest threat made against Knowles for the $315 Debt. Carter did not express any
5 shock, surprise, or confusion that anyone from Hartford or Nationwide would make
6 such a threat.

7     46. After being transferred back to Mason, Knowles asked Mason whether
8 the arrest warrant would now be recalled. Mason said they would stop the arrest.

9     47. After the call with Hartford and PMS, Knowles contacted a friend for
10 advice. Knowles told her friend what had happened, including Defendants' threats
11 of arrest for not paying a $315 consumer debt.

12     48. After Knowles' friend told her that they couldn't arrest her for failing
13 to pay a consumer debt, Knowles called Advance America.

14     49. Advance America confirmed that they did not, and could not, seek to
15 have Knowles arrested for nonpayment of her Debt.

16     50. Advance America also told Knowles that they had assigned her Debt
17 to First Financial and provided their telephone number.

18     51. Knowles called her bank and instructed it not to process any demands
19 for payment by PMS.

20     52. Knowles then called Hartford's number again and Mason answered.
21 Knowles asked for documentation verifying that they owned her Debt. Mason
22 promised to email it to her in the morning.

23     53. Knowles asked to speak with one of the attorneys at Hartford. Mason
24 told Knowles that all attorneys were out of the office.

25     54. Neither Mason, nor any of the Defendants, ever provided Knowles
26 with the promised verification.

27     55. On information and belief, no arrest warrant was ever issued for

28

Knowles nor any criminal complaint ever filed. All suggestions to the contrary were lies.

56. None of the Defendants disclosed that UDH held Knowles' alleged Debt.

57. Defendants' practices, as alleged above, of, *e.g.*, threatening arrest, accusing consumers of having committed criminal acts, misrepresenting that Defendants are working with law enforcement agencies, failing to disclose that the callers are debt collectors, misrepresenting that Defendants' communications are on behalf of attorneys, and misrepresenting the amount of money necessary to satisfy the debt, are common with regards to their interactions with the Class. Numerous consumers have reported that they have received calls that are, practically word for word, the same as the voicemail Knowles received (transcribed above). On information and belief, Defendants script these calls ensuring commonality and typicality of these violations.

58. Defendants' malicious and illegal tactics caused Knowles severe stress and mental anguish.

59. After October 15, 2014 Knowles has checked her bank account twice a day to verify there were no unauthorized transactions.

4. **Class Action Allegations**

60. Knowles brings this lawsuit on behalf of herself and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

61. This suit is brought on behalf of a class consisting of all persons within California who any Defendant threatened with arrest and/or criminal charges in connection with any attempt to collect a debt during the period beginning one year immediately prior to the filing of this action and continuing to the date of class

certification (the "Class").

62. The exact number of Class members is unknown but Plaintiff estimates the Class consists of at least hundreds of persons, which would make joinder of all individual Class members impracticable.

63. The identity of the members of the Class can be ascertained and established by reference to Defendants' records, including, *inter alia*, call lists, call recordings, notes of calls, databases, and scripts.

64. There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class, including whether Defendants' conduct violated the FDCPA and the Rosenthal Act. These common questions predominate.

65. The relief sought is common to the entire Class. Each affected Plaintiff and Class member will be entitled to a *pro rata* share of damages available under the FDCPA and the Rosenthal Act.

66. The claims of Plaintiff, as representative of the Class identified above, are typical of the claims of the Class. The claims of all members depend upon a showing of the acts and omissions of Defendants described herein giving rise to the right of all class members to the relief sought.

67. There is no conflict as between the individually named Plaintiff and other members of the Class with respect to this action, or with respect to the claims for relief herein set forth.

68. Plaintiff is able to and will fairly and adequately protect the interests of the Class. She has hired able counsel to do so.

69. Plaintiff's attorneys are well-credentialed and are experienced and capable in the field of consumer protection litigation and class actions. They have successfully prosecuted similar claims in other, similar litigation.

70. Certification of the Class is appropriate under applicable law. The

questions of law and fact common to the members of the Class predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and will create a substantial benefit to both the public and the courts in that:

    a. Costs of prosecuting all Class members' individual claims would vastly exceed the cost for prosecuting the case as a class action;

    b. Individual claims are of a size that makes them difficult to economically prosecute in individual litigation, but are substantial in the aggregate and thus can economically be litigated if aggregated;

    c. Class certification will obviate the necessity of a multiplicity of actions;

    d. It is desirable to concentrate the litigation of these claims in this forum; and

    e. Unification of common questions of fact and law into a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions.

71. A class action is a superior means of fairly and efficiently resolving this dispute.

72. Notice to the proposed Class will be accomplished directly using Defendants' own records and updated address, phone, and email data for Class members that is publicly available.

## 5. **Claims**

### (1) Violations of the FDCPA

73. Plaintiff incorporates the foregoing paragraphs as though repeated here.

74. Defendants' threats of arrest and criminal charges towards Knowles and the Class constitute harassment, oppression, and abuse in violation of 15 U.S.C.

§ 1692d.

75. Defendants' acts towards Knowles and the Class constitute false, deceptive, and/or misleading representations, in violation of 15 U.S.C. § 1692e. By way of example, Defendants' violations include, but are not necessarily limited to:

   a. Falsely implying that Defendants are working in conjunction with law enforcement agencies to arrest debtors;
   b. Misrepresenting that communications are from an attorney and not from a debt collector;
   c. Misrepresenting and implying that Knowles and class members have committed criminal acts and/or that Defendants intended to make, or have made, criminal complaints against them;
   d. Threatening to take actions that cannot legally be taken and that Defendants did not intend to take (*e.g.*, arresting Knowles for failure to pay a consumer debt);
   e. Failing to disclose in the initial communications that Defendants are attempting to collect debts and that any information obtained will be used for that purpose;
   f. Failing to disclose in subsequent communications that Defendants are debt collectors;
   g. Using names other than the true name of Defendants' businesses, companies, and/or organizations; and
   h. Making other false representations and deceptive acts in attempting to collect consumer debts.

76. Defendants' acts towards Knowles and the Class constitute unfair and unconscionable practices, in violation of 15 U.S.C. § 1692f. By way of example, Defendants' violations include, but are not necessarily limited to:

   a. Collecting, and seeking to collect, amounts not expressly

        authorized by any agreement between creditors and debtors or permitted by law (*e.g.*, by claiming Knowles owed attorneys' fees, even though no action had been filed against her and, on information and belief, no attorney had performed any legal services);

    b. Overstating charges; and

    c. Threatening arrest as to Knowles and the Class.

77. As a result of Defendants' violations, Plaintiff and the Class suffered and continue to suffer injuries that entitle them to recover actual damages.

78. Additionally, Defendants' frequent, intentional, and reprehensible violations of the FDCPA were knowing and willful and therefore justify the imposition of statutory damages to the full extent permissible under 15 U.S.C. § 1692k(a)(2)(A) against Defendants, and each of them.

### (2) Violations of the Rosenthal Act

79. Plaintiff incorporates the foregoing paragraphs as though repeated here.

80. Defendants' violations of the FDCPA, as alleged above, also constitute violations of the Rosenthal Act, as incorporated through California Civil Code § 1788.17.

81. Defendants' acts towards Knowles and the Class constitute threats and unlawful conduct in violation of California Civil Code § 1788.10. By way of example, Defendants' violations include, but are not necessarily limited to:

    a. Falsely representing to Knowles and the Class that the failure to pay a consumer debt will result in an accusation that Knowles and class members have committed crimes; and

    b. Threatening arrest for failure to pay a debt without the intent to do so and/or when such an act is not permitted by law.

82. Defendants' acts towards Knowles and the Class constitute misleading and/or false representations in violation of California Civil Code § 1788.13. By way of example, Defendants' violations include, but are not necessarily limited to:

    a. Falsely representing Defendants' names in communication with Knowles and the Class;

    b. Falsely representing that Defendants are speaking on behalf of attorneys rather than acting as debt collectors;

    c. Falsely representing that Defendants are affiliated, and/or working with, law enforcement or other government agencies;

    d. Falsely representing that criminal legal proceedings have been or will be instituted unless the alleged debt is paid.

83. As a result of Defendants' violations, Plaintiff and the Class suffered and continue to suffer injury that entitles them to the recovery of actual damages.

84. Additionally, Defendants' frequent, intentional, and reprehensible violations of the Rosenthal Act were knowing and willful and therefore justify the imposition of statutory damages to the full extent permissible under California Civil Code § 1788.30(b) against Defendants, and each of them.

85. Any remedies awarded pursuant to the Rosenthal Act are cumulative to those awarded pursuant to the FDCPA. *See Gonzales v. Arrow Fin'l Svcs., LLC*, 660 F.3d 1055, 1066–67 (9th Cir. 2011).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

86. For certification of the putative Class;

87. For restitution and disgorgement of all money or property wrongfully obtained by Defendants by means of their herein-alleged wrongful business practices;

88. For actual damages against Defendants;

89. For statutory penalties against Defendants;

90. For an accounting by Defendants for any and all funds, other properties, and promises to pay derived by them from their herein-alleged wrongful conduct and/or business practices; and

91. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, 15 U.S.C. § 1692, California Civil Code § 1788.30(c), California Code of Civil Procedure §1021.5, and the common law private attorney general doctrine.

92. For all such other and further relief that the Court may deem just and proper.

DATED:  November 19, 2014            **RESPECTFULLY SUBMITTED,**

                                                                                  **GALLO LLP**

By: /s/ Ray E. Gallo
      Ray E. Gallo
      Attorney for Plaintiff

**COMPLAINT**

Gallo LLP
1299 Fourth Street, Suite 505
San Rafael, CA 94901

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED:  November 19, 2014     **RESPECTFULLY SUBMITTED,**

**GALLO LLP**

By:  /s/ Ray E. Gallo
     Ray E. Gallo
     Attorney for Plaintiff

**COMPLAINT**

**EXHIBIT 1**

# Payment Management Solutions, Inc.

| | |
|---|---|
| 4248 Ridge Lea Suite 25 | Phone: 855-812-2732 |
| Amherst, New York 14226 | Fax:  585-486-1218 |
| | Email: executive.pms@gmail.com |

**CREDIT CARD PAYMENT AUTHORIZATION**

In order for our company to uphold the most secure procedures and authentication process of your payment (s) we request you to review the information listed below.  Upon your review please sign and date this authorization and return to our office promptly by way of facsimile, email, or by way of E-Docusign method.

I provide my full authorization to **Payment Management Solutions, Inc.** to charge my VISA/ MASTERCARD listed below:

| | | | | | | |
|---|---|---|---|---|---|---|
| Name: (as it appears on the credit card/debit card) | **MANDY ANGELA KNOWLES** | | | | | |
| Card Number: (16-digits) | ■■■■■■■■■■■■ | | | | | |
| Expiration Date: | ■■ | | | | | |
| Billing address of credit card/debit card: | ■■■■■■■■■■■■■■■■ | | | | | |
| CVV2 Code: (3-digit authorization code, located on the back of the card) | ■■ | | | | | |
| Amount of transaction(s): RUN AT 4PM EST | 270.00 | 270.00 | | | | |
| Date of transaction(s): (date service/items were received) | 10/15/14 | 11/1/14 | | | | |
| Services rendered/Items Purchased: | **Payment Arrangement on Delinquent Account "Pending Status"** | | | | | |
| Bank Name / Address / Telephone Number: | ■■■■■■■■■■ | | | | | |
| Consumer best reach telephone number: | ■■■■■■■ | | | | | |
| Consumer Email Address: | ■■■■■■■■■■■■■■■■■■■■■■ | | | | | |

I acknowledge that I have received all products, merchandise, and services associated with this agreement.
All letters will be issued to me no sooner than 30 days after clearance of all arrangements.
**I agree to pay what I owe according to the Card Issuer Agreement**

Consumer/Payee Signature: _____   Date: _____

| Case Number: | Date of Recording: | Time of Recording: | SS# Verification: |
|---|---|---|---|
| JCV 1024189 | 10/15/14 | 3:26 PM | ■■■ |

Exhibit 1